J-S08045-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: B.S. IN THE INTEREST OF: M.S. | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.M., NATURAL MOTHER | : : : : : : : | No. 1708 WDA 2017 |

Appeal from the Order September 22, 2017
In the Court of Common Pleas of Clearfield County Orphans' Court at
No(s):  3410-2017-OC,
3411-2017-OC

BEFORE:   LAZARUS, J., KUNSELMAN, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:              **FILED FEBRUARY 27, 2018**

Appellant, M.M. ("Mother"), files this appeal from the order entered on September 22, 2017, in the Clearfield County Court of Common Pleas, which granted the petition to involuntarily terminate her parental rights to her minor children, B.T.S., born in March of 2009, and M.D.S., born in December of 2012, (collectively, the "Children"), pursuant to 23 Pa.C.S.A. § 2511(a)(1), and (b).  After a careful review, we affirm.

On April 28, 2017, T.C.S. ("Father") filed a petition for the involuntary termination of Mother's parental rights as to the Children, and on July 13, 2017, the matter proceeded to a hearing. Based on the testimony presented at the hearing, the trial court found the following:

> During the hearing in this case, it was established that Mother and Father were involved in a relationship for a period in excess of 10 years, and that Mother was incarcerated off and on

_____
* Former Justice specially assigned to the Superior Court.

during that time beginning in 2009. As a result, the relationship ended in 2014 when [B.T.S.] was six (6) years of age and [M.D.S.] was two (2) years of age. Father has had primary physical custody of both Children since the separation and has been the sole caretaker for both Children. Father remarried on March 12, 2015, and the Children live in the home with him, Stepmother, and two half siblings. Stepmother cares for the Children at home while Father works.

Pursuant to a Custody Order dated March 23, 2016, Mother had partial custody of both Children every other weekend for eight (8) hours on Saturday and eight (8) hours on Sunday (no overnights). However, Father testified that Mother did not exercise her custody rights because she was incarcerated from January 2015 through February 2016. During that time, Mother's only contact with the Children was through letters delivered to Father by the maternal grandmother. After Mother's release, she maintained visitation with the [C]hildren in accordance with the Custody Order for a short time, but this Court suspended contact by Mother with [B.T.S.] on April 29, 2016[,] following a Children, Youth, and Family Services [("CYFS")] report. Mother has been incarcerated more than once since that time, and her current incarceration at SCI Muncy began October 10, 2016.[1] In the few months between incarcerations, Mother had limited contact with the Children, and she has not had physical contact with [B.T.S.] since April of 2016, or [M.D.S.] since May of 2016. Mother admitted in testimony that she was released from incarceration from August of 2016 until her most recent incarceration, but she made no attempt to see the Children in those two months.

Mother also testified that her telephone was blocked from SCI Muncy when she attempted to contact Father's phone to speak with the Children. Mother also testified that she has, in the past, sent cards and presents to the Children through maternal grandmother, who drives to Father's home unannounced to deliver the gifts because she believes Father has her phone blocked as well. Father admits that he did block Mother's calls in the past while she was in the Clearfield County Jail following a restraining order on Mother, but he stated he has no blocks on his phone at this time.

_____

[1] As of the time of the hearing, Mother was serving a prison sentence of six months to three years. N.T., 7/13/17, at 8.

Trial Court Opinion, filed 9/22/17, at 3-4.

At the conclusion of the hearing, the trial court found that Father met his burden of proving by clear and convincing evidence that Mother's parental rights should be terminated with regard to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(1). Further, the trial court determined that the termination of Mother's parental rights would be in the best interests of the Children pursuant to Section 2511(b). Accordingly, by order entered on September 22, 2017, the trial court terminated Mother's parental rights as to the Children. Mother filed this timely notice of appeal.[2]

In an order entered on October 24, 2017, the trial court directed Mother to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b) within twenty-one days or face waiver of all issues on appeal. On November 14, 2017, counsel filed the required concise statement on Mother's behalf. As Father does not assert prejudice from Mother's failure to file a concise statement contemporaneously with her notice of appeal, and Mother complied with the trial court's order to file a concise

---

[2] Despite being represented by counsel, Mother filed the instant appeal *pro se*. She did not file a concise statement of errors complained of on appeal with her notice of appeal. *See* Pa.R.A.P. 905(a)(2) ("If the appeal is a children's fast track appeal, the concise statement of errors complained of on appeal as described in Rule 1925(a)(2) shall be filed with the notice of appeal and served in accordance with Rule 1925(b)(1).").

statement by a certain date, we do not find her issues waived. **See In re K.T.E.L.**, 983 A.2d 745, 747 (Pa.Super. 2009) (holding that there is no *per se* rule mandating quashal or dismissal of a defective notice of appeal in children's fast track cases); **Mudge v. Mudge**, 6 A.3d 1031 (Pa.Super. 2011) (same).

On appeal, Mother raises the following issues, which we set forth verbatim:

1. Whether the court erred in terminating Mother's parental rights when evidence was presented that Mother was not evidencing a settled purpose to relinquish her parental claims to the [C]hildren[?]

2. Whether the court erred in terminating Mother's parental rights when it determined that Mother refused or failed to perform any parental duties for the statutory period when the evidence showed steps were taken to prevent Mother from having contact with the [C]hildren[?]

Appellant's Brief at 7.

In matters involving the involuntary termination of parental rights, our standard of review is as follows:

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." **In re Adoption of S.P.**, [616 Pa. 309, 325, 47 A.3d 817, 826 (2012)]. "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." **Id.** "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." **Id.** The trial court's decision, however, should not be reversed merely because the record would support a different result. **Id.** at [325-26, 47 A.3d at] 827. We have previously emphasized our deference to trial courts that often have first-hand observations of

the parties spanning multiple hearings. *See In re R.J.T.*, [608 Pa. 9, 26-27, 9 A.3d 1179, 1190 (2010)].

*In re T.S.M.*, 620 Pa. 602, 628, 71 A.3d 251, 267 (2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted).

The termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, and requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the children.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (quoting *Matter of Adoption of Charles E.D.M., II*, 550 Pa. 595, 601, 708 A.2d 88, 91 (1998)).

In the case *sub judice*, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b) which provide, in relevant part, the following:

**§ 2511. Grounds for involuntary termination**

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\*\*\*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1) and (b) (bold in original).

Termination under Section 2511(a)(1) involves the following:

To satisfy the requirements of [S]ection 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

> Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if

the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for [the parent's] conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted). Regarding the six-month period prior to filing the termination petition:

[T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of [the parent's] parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004) (citations omitted).

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006). Relevantly, our Supreme Court has stated as follows:

[I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." In *In re E.M. [a/k/a E.W.C. & L.M. a/k/a L.C., Jr.]*, [533 Pa. 115,] 620 A.2d [481, 485 (1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing

- 7 -

the parental bond. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, 620 Pa. 602, 71 A.3d 251, 267 (2013) (citation and quotation omitted).

"[I]n cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa.Super. 2010) (citations omitted). "Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super. 2010) (internal citations omitted). Moreover, the parent-child bond is "only one of many factors to be considered by the court when determining what is in the best interest of the child." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa.Super. 2015) (quotation marks and quotation omitted).

Here, in involuntarily terminating Mother's parental rights, the trial court indicated, in relevant part, the following:

> A parent's responsibilities are not excused because they are incarcerated and the fact that a parent is incarcerated does not, in itself provide grounds for the termination of parental rights. *See In re Adoption of S.P.*, 616 Pa. 309, 47 A.3d 817, 823 (2012). However, Mother's incarceration, presently and in the past, does not provide an excuse for the times she failed to pursue visitation with the [C]hildren in her brief periods not incarcerated. Additionally, Mother knows Father's physical address and his landline phone number, but she has made little attempt to communicate with the Children since Mother's and Father's

separation in 2014.[3] Mother has the responsibility of utilizing whatever resources available while incarcerated to maintain a relationship with [the] [C]hildren, but she has failed to do so. Therefore, Mother's conduct, regardless of her incarceration status, is sufficient to fulfill the 23 Pa.C.S.A. § 2511(a)(1) requirement that Mother failed to perform her parental duties for a period of six (6) months or longer.

In addition to the conduct of the parent, the court must also consider the needs and welfare of the [C]hildren, applying a best interests of the children standard. . . Both Children have resided with Father and Stepmother since 2015, and they have two half-siblings in the home. Father provides for the family financially while Stepmother cares for all of the children in the home. Both Father and Stepmother provide for the [C]hildren's emotional, physical, and mental well-being, and it is clear to th[e] court that Father and Stepmother are providing a life of structure and stability for both Children.

Adversely, it is clear to th[e] court that Mother has not taken the appropriate steps to maintain a relationship with the Children in the past several years,[4] and has refused to perform even the minimal parental duties available to her while incarcerated. Mother has not made any legitimate attempt to contact her children for the past 6 months or longer, while incarcerated or otherwise.

Trial Court Opinion, filed 9/22/17, at 4-5 (footnotes added).

---

[3] Pointing to excerpts from her testimony, Mother contends the trial court erred in failing to find Father interfered with Mother's efforts to maintain a relationship with the Children. *See* Appellant's Brief at 13. However, as was within its province, the trial court resolved the factual disputes in favor of Father. *See In re M.G. & J.G.*, *supra*.

[4] With regard to the lack of a bond between Mother and the Children, the trial court accepted the testimony of Father that, since 2014, Mother has had limited contact with the Children and, since May of 2016, she has had "absolutely no" contact with the Children. N.T., 7/13/17, at 16; Trial Court Opinion, filed 9/22/17, at 3-4. *See In re Adoption of J.M.*, *supra* (indicating where there is no evidence of a bond between a parent and child, it is reasonable to infer no bond exists).

Based upon our review, we find no abuse of discretion and conclude the trial court appropriately terminated Mother's parental rights under 23 Pa.C.S.A. § 2511(a)(1) and (b). We, therefore, affirm the trial court's order.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/27/2018